Hillsborough,
No. 4479.

HAROLD C. WELCH *v.* ALICE READ *& a.*

Argued March 7, 1956.

Decided March 29, 1956.

*James L. Ryan* (by brief and orally), for the plaintiff.

*Aaron A. Harkaway* for the defendants.

GOODNOW, J. Laws 1955, *c.* 322, authorized the Merrimack village district "to incur indebtedness in an amount not exceeding $150,000" for the construction of a water works system. The amount so authorized exceeds the limit within which a municipality is generally required to confine its indebtedness for the purchase or construction of water works (RSA 38:11), that limit being "ten per cent of the tax valuation of the municipality." The sole question presented by this case is whether the Legislature, by its adoption of Laws 1955, *c.* 322, intended to increase the authorized indebtedness of the Merrimack village district for this purpose above the limit established by the municipal lighting and water systems act. RSA 38:11. We believe it did.

The pertinent provisions of Laws 1955, *c.* 322, are as follows:

1. "The Merrimack Village District . . . is hereby authorized to incur indebtedness in an amount not exceeding $150,000, excluding the amount authorized by" RSA ch. 33, "for the purpose of purchasing or constructing, or both, and maintaining and operating such water works system as it may deem necessary for municipal use and for the use of its inhabitants and others.

2. "The Merrimack Village District is hereby authorized to issue serial notes or bonds to an amount not exceeding $150,000 for the purpose of the construction of a district water system.

3. "In ascertaining the debt limit of said Merrimack Village District the debt hereby authorized shall be excluded."

The plaintiff contends that the authority to incur an indebtedness of $150,000 granted by this act was intended by the Legislature to be "qualified by the requirement that such indebtedness not exceed . . . ten per cent of the tax valuation of the Village District," the limit imposed by RSA 38:11, "when such tax valuation be ascertained." A short answer to this contention is that its acceptance would require a conclusion that the Legislature intended to accomplish nothing by its adoption of this act. As soon as the district was organized, and before the special act was adopted, it had authority under RSA 38:11 to incur indebtedness to the

extent contended for by the plaintiff. The court will not assume that the Legislature acted without reason or purpose in adopting the special act. *Trustees &c. Academy* v. *Exeter*, 92 N. H. 473, 482.

An examination of the plaintiff's arguments in support of his contention confirms the opinion that the Legislature did not so intend to limit its grant of authority. The fact that the act, in authorizing an indebtedness of $150,000, specifically excluded "the amount authorized by" RSA ch. 33, the municipal finance act, but did not similarly exclude the amount authorized by RSA 38:11, the municipal lighting and water systems act, is not significant. The purpose of excluding the amount authorized by RSA ch. 33 was not to relieve the district from the debt limitation imposed by it, as the plaintiff seems to assume (see RSA 33:1), but to specifically permit the district to incur the indebtedness allowed by the municipal finance act, in addition to the $150,000 authorized by the special act in question. *Cf.* Laws 1955, *c.* 292, *s.* 2. On the other hand, the fact that the special act did not also exclude the amount of debt authorized by the general provisions of the municipal lighting and water systems act (RSA 38:11) does not indicate that the Legislature intended that those provisions should operate in derogation of the plain limitation of $150,000 established by the special act. It evidences at most that the district is not specifically permitted to incur the indebtedness allowed by the general act (RSA ch. 38), in addition to that authorized by the special act.

The fact that the tax valuation of the district was not known when the act was adopted does not indicate that the Legislature intended that the limit of $150,000 established by it was to be cut to the limit prescribed by RSA 38:11 when that valuation was determined. On the contrary, the fact that the district had been so recently organized that the valuation of the property within its bounds was not known supports an intention on the part of the Legislature, in the interest of expediency, to establish the debt limit in dollars rather than relate it to a percentage of the property valuation.

The power to increase or decrease the authorized indebtedness which a municipality may incur is "peculiarly within the legislative power." *State* v. *Goffstown*, 100 N. H. 131. When it establishes the debt limit of a municipality above or below that permitted by general statutes concerned with municipal debt limits, such as RSA 38:11, the Legislature is not acting in conflict with nor amending or repealing those statutes but is exercising its plenary

control of local government. The language which it employs in the exercise of this power is indicative of its intention. In this case, it seems significant that the maximum indebtedness authorized for a water works system is fixed by section 1 at a stated number of dollars. The same number of dollars is used in section 2 to fix the amount of the serial notes or bonds which the district is authorized to issue. If this language means anything, it must necessarily mean that the Legislature intended to establish the authorized indebtedness of the district for the construction of a water works system at $150,000, without regard to the limit imposed by RSA 38:11.

In accordance with the terms stated in the reserved case,

*Petition dismissed.*

All concurred.